427 So.2d 1114 (1983)
The STATE of Florida, Appellant,
v.
Walter Thomas WININGER, Appellee.
No. 82-1245.
District Court of Appeal of Florida, Third District.
March 15, 1983.
*1115 Jim Smith, Atty. Gen. and Paul Mendelson, Asst. Atty. Gen., for appellant.
Mark King Leban, Miami, Stephen J. Goldstein, North Miami, for appellee.
Before SCHWARTZ, C.J., and DANIEL S. PEARSON and JORGENSON, JJ.
DANIEL S. PEARSON, Judge.
Wininger, at the request of police officers investigating a homicide, went to the police station for questioning. He was given Miranda warnings and to a certain point in the interrogation freely answered questions. That certain point arrived when Wininger was informed he was a suspect. At that moment he stated to the interrogating officer: "I don't believe it. I want to go home. Can I?" The officer responded, "Sure, you will be able to go, but I want to talk to you about this. It's very serious. A man you lived with for 17 years is dead." The questioning immediately continued, and the defendant answered the questions.
The trial court found that the defendant's request to go home was the functional equivalent of an "announced desire to cease the interrogation," which was not, when the police continued the interrogation, scrupulously honored, as it had to be. See Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). It suppressed all statements made by the defendant following the defendant's request to go home. The State has appealed the trial court's suppression order. We affirm.
Our starting and, as will be seen, ending point is Miranda v. Arizona, 384 U.S. 436, 473-74, 86 S.Ct. 1602, 1627-28, 16 L.Ed.2d 694, 723, 10 A.L.R.3d 974 (1966), in which the Court stated:
"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise." (emphasis supplied).
Because it is clear that the questioning of the defendant did not immediately cease, see Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (where defendant's request to cut off questioning was honored, resumption of questioning with respect to a different crime after the passage of a significant period of time and fresh set of warnings did not violate Miranda), the sole issue before us is whether the defendant's words, "I want to go home. Can I?" indicated in any manner that the defendant wished to invoke his right to remain silent.
We agree with the trial court's finding that the defendant's request manifested a *1116 desire to end the interrogation. The request, made on the heels of being informed for the first time that he was a suspect, was, at the least, an indication in some manner that the defendant did not want to answer further questions. See Thompson v. State, 386 So.2d 264, 267 (Fla. 3d DCA 1980). It thus significantly differs from a statement which merely evinces a desire to have someone present during the interrogation, see, e.g., Fare v. Michael C., 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979) (juvenile's request, "Can I have my probation officer here?" consistent with a desire to speak to police, not deemed to be invocation of right to remain silent); United States ex rel. Riley v. Franzen, 653 F.2d 1153 (7th Cir.1981) (defendant's request to see his father while being interrogated did not constitute an invocation of right to remain silent), or even one which evinces a desire to have an attorney present during the interrogation. See, e.g., Jennings v. State, 413 So.2d 24 (Fla. 1982) (waiver of counsel, accompanied by express willingness to talk, does not implicate right against self-incrimination); Nash v. Estelle, 597 F.2d 513 (5th Cir.1979) (en banc) (same  equivocal request for counsel, accompanied by express willingness to talk). But if, however, the police were in doubt as to the meaning of the defendant's request to go home, then further inquiry should have been limited to clarifying the defendant's wishes. See Cannady v. State, 427 So.2d 723 (Fla. 1983); cf. Thompson v. Wainwright, 601 F.2d 768 (5th Cir.1979); Nash v. Estelle, 597 F.2d 513.
Concededly, a suspect may waive his right to remain silent. That right, however, is independent of the right to counsel. Thus, it does not follow from either the invocation or waiver of the right to counsel that the right to remain silent has been invoked or waived. We therefore reject the State's contention that the defendant's request for counsel at a still later stage of the interrogation is inconsistent with the trial court's conclusion that the defendant's earlier request to go home invoked his right to remain silent.
Similarly, we reject the State's further contention that the fact that the defendant answered questions, both before and after requesting to go home, belies the conclusion that the defendant by his request to go home indicated a desire to remain silent. Were we to measure the meaning of the defendant's words by his willingness to speak at an earlier stage of the interrogation, then the most unequivocal refusal to answer further questions would become equivocal. Indeed, the aspect of Miranda v. Arizona which gives a suspect the right "during questioning" to end the interrogation would be totally undermined were his previous willingness to answer questions used to dilute his request that questioning stop. With respect to the State's contention that the fact that the defendant continued to answer questions after his request to go home shows that the defendant's statement was not an indication that he wished to remain silent, we need only note that the very protection which this aspect of Miranda v. Arizona is designed to afford is to preclude the State from using the defendant's answers to questions asked after the defendant has invoked his right to remain silent. It is sophistry to suggest that the act of answering questions after the invocation of the right to remain silent, an act deemed by Miranda to be the "product of compulsion, subtle or otherwise," 384 U.S. at 474, 86 S.Ct. at 1628, can be used to show that the defendant really did not mean it when he earlier indicated his desire to remain silent.
Affirmed.